# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| THEODORE WESSELMANN, | |
| Plaintiff, | No. 15-CV-4247-LTS |
| vs. | **ORDER** |
| TYSON FOODS, INC., | |
| Defendant. | |

## I. INTRODUCTION

This matter is before the Court pursuant to defendant Tyson Foods, Inc.'s (Tyson) Motion for a Protective Order to Exclude Plaintiff from Deposition of Tammie Swanson (Expedited/Emergency Relief Requested), filed on November 22, 2016. Doc. 23. On November 23, 2016, the Court scheduled oral argument on Tyson's motion. Doc. 24. On the same day, plaintiff Theodore Wesselmann (Wesselmann) filed a timely resistance to Tyson's motion. Doc. 25. On Monday, November 28, 2016, the Court held a hearing on Tyson's motion. For the reasons stated at the hearing and that follow, the Court grants Tyson's motion.

## II. BACKGROUND

On December 8, 2015, Wesselmann filed a complaint in this Court alleging that Tyson wrongfully terminated his employment because of a physical disability. Doc. 2. Wesselmann apparently has a history of seizures. Doc. 23-2, at 1; Doc. 25, at 4.

On September 6, 2014, Wesselmann claims he was delivering paperwork to Tyson's plant nurse, Tammie Swanson (Swanson). Doc. 25, at 2. Tyson alleges that Wesselmann came to Tyson's Health Services Department where Swanson worked and specifically asked to speak with her in an exam room. Doc. 23-1. Once in the exam

room, Swanson alleges Wesselmann began to display symptoms of a seizure, but then came at her laughing, put her in a head lock, and tried to touch her chest. Doc. 23-1; Doc. 23-5. Wesselmann claims no memory of the event. Doc. 23-3. Yet, Wesselmann apparently later told a health care provider that he was having a seizure, felt as though he was going to fall, and grabbed the employee health nurse. Doc. 25, at 4.

After investigating the incident, Tyson terminated Wesselmann's employment. Doc. 23-2. Wesselmann claims he did not assault Swanson and "that is the fiction [Tyson] used to justify his termination." Doc. 23-4, at 2. He "denies that he has ever intentionally assaulted Tammie Swanson, nor has he ever stalked her." Doc. 25, at 2.

Wesselmann noticed Swanson's discovery deposition to take place on November 30, 2016, at 1:00 p.m. Doc. 23-1, at 2. Swanson cooperated in scheduling her deposition, but "fears for her personal safety and does not want Wesselmann physically present" at her deposition. *Id*. Tyson asked that Wesselmann honor Swanson's wishes. Doc. 23-4, at 1.[1] Wesselmann declined, stating that "[a]s a party, he is entitled to be present during all depositions and he will be at hers." Doc. 23-4, at 2.

### III. PARTIES' ARGUMENTS

Tyson seeks a protective order, pursuant to Rule 26(c)(1)(E), to bar Wesselmann from attending Swanson's deposition. Doc. 23-1. Tyson argues the Court has the authority to bar even a party from attending a deposition if in balancing "the relative interests" it "finds the presence of a party during a deposition would cause severe distress for the deponent . . . ." Doc. 23-1, at 3. Tyson suggests "[t]here are numerous ways Wesselmann can actively participate in Ms. Swanson's deposition without physically attending, including, but not limited to, participating by telephone or taking regular

---

[1] In doing so, the Court finds Tyson complied in good faith with Fed. R. Civ. P. 37 and the Court's Local Rules by attempting to consult with opposing counsel to resolve the dispute before filing the instant motion.

breaks to confer with his counsel regarding the deposition." *Id*. Tyson cites legal authority in support of its argument.

Wesselmann resists Tyson's motion. Doc. 25. In his resistance, Wesselmann argues that he suffers from seizures and describes some of the effects on him when he experiences a seizure. Doc. 25, at 1. As previously noted, Wesselmann denies that he ever "intentionally assaulted" Swanson and notes that "[n]o criminal complaint was filed" in relation to the incident. Doc. 25, at 2. Wesselmann then claims he recently encountered Swanson at a store, "[t]hey briefly exchanged pleasantries and continued on" and that "Swanson didn't appear concerned nor did she avoid him." *Id*. Wesselmann also claims he "has been contacted by the Storm Lake Police Department which advised him that Tyson has hired police officers to attend the depositions scheduled for next week." *Id*. Finally, Wesselmann argues Tyson's motion is "an overreaction" and "unnecessary," and speculates that it "is tactical." *Id*. Wesselmann does not indicate what tactical advantage he claims Tyson would gain by having him absent from the deposition. Wesselmann cited no legal authority in support of his resistance.

## IV. DISCUSSION

Rule 26(c)(1)(E) of the Federal Rules of Civil Procedure provides that a Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . designating the persons who may be present while the discovery is conducted . . .." FED. R. CIV. P. 26(c)(1)(E). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (holding that the Federal Rule of Civil Procedure 26 "confers broad discretion on the [district] court to decide when a protective order is appropriate and what degree of

protection is required."). As a general matter, "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery." *Id*.

Rule 26(c) requires the party seeking a protective order show "good cause" for a protective order. FED. R. CIV. P. 26(c)(1)(E). "'Good cause' within the meaning of Rule 26(c) contemplates a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). *See also*, *e.g.*, *Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973) (setting forth standard); *Tolbert–Smith v. Bodman*, 253 F.R.D. 2, 4 (D.C. Cir. 2008) (setting forth meaning of "good cause" under Rule 26(c)); *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (same). Protective orders pursuant to Rule 26(c)(1)(E) can include barring even parties from attending depositions. *See*, *e.g.*, *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973) (holding district court had authority to bar party from attending deposition); *Tolbert-Smith*, 253 F.R.D. at 4 & n.1 (same); *In re Shell Oil Co.*, 136 F.R.D. 615, 617 (E.D. La. 1991) (same); *Kerschbaumer v. Bell*, 112 F.R.D. 426, 426 (D. D.C. 1986) (noting that a court may bar parties from attending depositions, but declining to do so where the moving party provided only an inchoate fear that it would result in perjury).

Tyson argues that good cause exists here to exclude Wesselmann from attending Swanson's deposition because she is fearful of Wesselmann. Good cause can include preventing the intimidation of a witness at a deposition. *See*, *e.g.*, *Monroe v. Sisters of St. Francis Health Serv., Inc.*, No. 2:09 cv 411, 2010 WL 4876743, at *3 (N.D. Ind. Nov. 23, 2010) (granting protective order barring supervisors from attending deposition of employee who claimed he was wrongfully terminated because he suffered from cerebral palsy and would feel intimidated by the supervisors' presence); *In re Shell Oil*

4

*Refinery*, 136 F.R.D. at 617 (granting a protective order to prevent intimidation of a witness at a deposition).

Tyson has established good cause for excluding Wesselmann from Swanson's deposition. The Court fully understands that Wesselmann denies intentionally attacking Swanson and that issue may constitute the central factual dispute at trial. Nevertheless, there appears to be no question that some encounter took place between Wesselmann and Swanson on September 6, 2014. Based on Swanson's affidavit, Swanson believes Wesselmann intentionally attacked her and has since feared him. Doc. 23-5. At the hearing, both parties conceded the fact that Swanson has some "fear." Wesselmann, however, disputes the extent and/or rationality of Swanson's fear. Whether that fear is justified or rational, or whether Wesselmann can ultimately prove that his contact with Swanson that day was the involuntary result of a seizure, is not relevant to whether Swanson is actually fearful of him. *See Tolbert-Smith*, 253 F.R.D. at 4 (holding exclusion of corporate representative from deposition justified, "however irrational" the deponent's fear of the company's representative may be).

In contrast, Wesselmann offers no persuasive argument for why his attendance is necessary. In his briefing, Wesselmann simply argues that he did not intentionally attack Swanson. As noted, that is not relevant to this issue. At the hearing, counsel for Wesselmann stated that his attendance is necessary as it is "critical to have him there to tell what happened" when deposing Swanson, whom plaintiff describes as the "most" critical witness in the case. The Court finds this unpersuasive, however, as Wesselmann claims to have no memory of the incident. *See* Doc. 23-3 ("I don't have any memory of the incident in question . . . .").

At the hearing, Wesselmann's counsel also emphasized that there is no real likelihood Wesselmann would actually attack Swanson at the deposition and even if he tried to do so or had a seizures, Tyson could have an off-duty officer provide adequate

security. This argument misses the point. Whether Wesselmann would actually attack Swanson is not the issue. Rather, it is whether Swanson's fear of an attack, rational or irrational, would inhibit her ability to testify. Moreover, whether Tyson has hired police officers to be present at depositions is irrelevant. A party ought not to be required to hire law enforcement officers to be present at a deposition to ensure the safety, or the sense of security, to a deponent. Rather, a protective order is the appropriate remedy.

Wesselmann does, however, have a vested interest in effectively deposing Swanson. The Court finds this interest can be adequately advanced without him being physically present at Swanson's deposition. For example, Wesselmann's counsel can confer at length with Wesselmann before the deposition to obtain all of the information necessary to effectively question Swanson. *See Tolbert-Smith*, 253 F.R.D. at 4 ("[D]efense counsel can obtain information about those incidents [from the supervisors] before the deposition and review with them the relevant documents at the same time."). Wesselmann's counsel may consult with Wesselmann outside the deposition room. *Id.*, at 4-5; *see also In re Shell Oil Refinery*, 136 F.R.D. at 617. Should Wesselmann seek to exercise this option, the Court will permit ten minute breaks every hour, which time shall not count against the seven-hour limitation set forth in FED. R. CIV. P. 30(d). Finally, as Tyson has suggested, Wesselmann can participate by telephone should he choose. The Court notes, at the hearing, counsel for Wesselmann indicated his intent to have Wesselmann participate by telephone.

## V. CONCLUSION

The Court **grants** Tyson's Motion for a Protective Order to Exclude Plaintiff From Deposition of Tammie Swanson (Doc. 23). Wesselmann is barred from personally attending Swanson's deposition.

**IT IS SO ORDERED** this 28th day of November, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa